**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RONALD GOODMASTER,          :
  Plaintiff,              :
                            :
v.                          :
                            :
THE TOWN OF SEYMOUR,         :
TOWN OF SEYMOUR BOARD        :    CIVIL NO: 3:14-CV-00060(AVC)
OF SELECTMEN,                :
W. KURT MILLER,              :
LUCY MCCONOLOGUE, and        :
MICHAEL METZLER             :
  Defendants.             :

<u>**RULING ON THE DEFENDANTS' MOTION TO DISMISS**</u>

    This is an action for damages in which the plaintiff, Ronald Goodmaster, alleges that the defendants wrongfully refused to extend his employment as a police officer in the town of Seymour based on his age and his outspoken opposition to the police department's prior actions.  It is brought pursuant to the American Discrimination in Employment Act ("ADEA")[1]; Title VII of the Civil Rights Act of 1964 ("Title VII"); the Connecticut Fair Employment Practices Act ("CFEPA")[2]; the First Amendment, the equal protection clause, and the due process clause of the United States Constitution; and common law tenets concerning civil conspiracy and intentional infliction of emotional distress.

_____

[1] 29 U.S.C. § 621.

[2] Conn. Gen. Stat. § 46a-60(a).

The defendants filed a partial motion to dismiss the board of selectmen as a defendant and counts two, three, six, and seven of the complaint.  The issues presented are: 1) whether the board of selectmen is a proper defendant; 2) whether the ADEA preempts claims brought pursuant to § 1983; 3) whether Goodmaster's administrative complaints address matters of public concern for purposes of bringing a First Amendment retaliation claim; 4) whether the individual defendants are entitled to qualified immunity; and 5) whether the defendants engaged in extreme and outrageous conduct to support a claim for intentional infliction of emotional distress.

For the following reasons, the defendants' motion to dismiss (document no. 26) is GRANTED with respect to the board of selectmen as a defendant and counts two, six, and seven, and GRANTED IN PART and DENIED IN PART with respect to count three.

### FACTS

An examination of the complaint reveals the following allegations:

The plaintiff, Ronald Goodmaster, is a former police officer in the town of Seymour, Connecticut.  The defendants include the town of Seymour (the "town"); the town's board of selectmen; the town's first selectman, W. Kurt Miller; the town's chairman of the board of police commissioners, Lucy

McConologue; and the chief of the Seymour police department,
Michael Metzler.

In 1989, Goodmaster began working for the town's police
department.  In 1996, the police department promoted Goodmaster
to detective and youth officer, and in 2006, it promoted him to
detective sergeant.  Throughout his career, the police
department has awarded numerous accolades and citations to
Goodmaster personally and to the unit he commanded.

During his employment, Goodmaster outwardly criticized the
town, its police department, and the individuals named in the
complaint for "actions he perceived as unlawful, unethical and
unfair."  He has "filed Freedom of Information Act requests upon
the defendants, and has gone to hearings before that Commission
to compel the defendants to abide by the law."

Moreover, Goodmaster has filed grievances and complaints
alleging age discrimination and retaliation against him for
attempting to expose the mismanagement of the police department.
For example, Goodmaster has filed complaints with the Equal
Employment Opportunity Commission ("EEOC") and the Connecticut
Commission on Human Rights and Opportunities ("CHRO"), which
were resolved in August 2012.

On March 8, 2013, Goodmaster turned sixty-five years old,
which, according to Connecticut law, required him to file a
request to continue to serve as a police officer.  Prior to

March 8, 2013, Goodmaster had submitted a request to continue his employment to the board of police commissioners, the entity that, according to the complaint, is entrusted with personnel decisions related to the police department.  The complaint alleges that between the years 1971 and 1977, the board of police commissioners granted two-year extensions to two other police officers to work past the age of sixty-five.[3]

On September 13, 2012, the board of police commissioners voted to extend Goodmaster's employment until March 8, 2014. The board of police commissioners described Goodmaster as "a highly qualified and highly trained police supervisor with over 23 years of service to the Town of Seymour."  One individual acknowledged that retaining Goodmaster would help address "the police manpower shortage problem."

Sometime thereafter, the board of selectman held a hearing and determined that Goodmaster's employment should not extend past his sixty-fifth birthday.  At the hearing, Miller "publicly admitted that he perceived the plaintiff to be a 'liability' to the Town, despite the defendant Board of Selectmen's, and his, admitted ignorance of the plaintiff's work performance and of police personnel decisions generally."  Miller also expressed

---

[3] The complaint alleges that the commissioners approved a two-year extension for Officer William King in 1971 and for Officer Salvatore Feducia in 1974. In 1976, Feducia requested a one-year extension, which the board tabled for several months and ultimately rejected.  Upon rejecting the request, the board moved to notify the first selectman of the decision so that the board of selectmen may take appropriate action.

concern regarding whether extending Goodmaster's employment
would affect the promotion of younger officers.  As a result of
the hearing before the board of selectmen, "the defendants
terminated the plaintiff's employment on March 8, 2013, the
plaintiff's sixty-fifth birthday."

Following the hearing, Miller and Metzler urged McConologue
to "pressure[] the Board of Police Commissioners to change its
decision [to extend Goodmaster's employment]."  Immediately
following Goodmaster's dismissal, the police department promoted
an officer significantly younger than Goodmaster to his
position, and McConologue "unlawfully permitted the defendant
Metzler to participate in the hiring process of [Goodmaster's]
replacement."

According to the complaint, this is the first and only time
that a decision by the board of police commissioners has been
"disregarded," "assailed," or "overturned" by the board of
selectmen.  Similarly, the complaint alleges that this is the
first and only time that the defendants claim that the "Board of
Selectmen, rather than the Board of Police Commissioners, has
the exclusive authority to decide whether or not to continue an
employee's service as a Police Officer."

**STANDARD**

The court must grant a motion to dismiss pursuant to rule
12(b)(6) of the Federal Rules of Civil Procedure if a plaintiff

fails to establish a claim upon which relief may be granted.  A
motion to dismiss "assess[es] the legal feasibility of the
complaint, [but it does] not . . . assay the weight of the
evidence which might be offered in support thereof."  Ryder
Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748
F.2d 774, 779 (2d Cir. 1984).  When ruling on a motion to
dismiss, the court must presume that the well-pleaded facts
alleged in the complaint are true and draw all reasonable
inferences from those facts in favor of the plaintiff.  See
Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

The issue at this juncture is not whether the plaintiff
will prevail but whether he should have the opportunity to prove
his claim.  See Conley v. Gibson, 355 U.S. 41, 45 (1957).  "To
survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 570 (2007)); see also Gibbons v. Malone, 703 F.3d 595,
599 (2d Cir. 2013).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  Iqbal, 556 U.S. at 678; see also Twombly,
550 U.S. at 555 (stating that a complaint must provide more than
"a formulaic recitation of the elements of a cause of action").

In its review of a 12(b)(6) motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

**DISCUSSION**

**I.   The Board of Selectmen as a Proper Defendant**

The defendants argue that "the proper defendant is the Town, not the Board of Selectmen."  They contend that while a municipality can sue or be sued, "there is no equivalent provision for municipal departments, boards, commissions, authorities, etc."  Goodmaster responds that the board of selectmen is a proper defendant because the board is "jointly and severally liable to the town."  He also notes that the board has been a defendant in previous cases.

"In order to state a cause of action, each party must be a legal entity with the legal capacity to sue or be sued."  Holt v. Town of Stonington, No. 3:09-CV-2069(JCH), 2011 WL 5864812, at *3 (D. Conn. Nov. 18, 2011) (citing Luysterborghs v. Pension & Ret. Bd. of Milford, 927 A.2d 385, 387 (Conn. Super. Ct. 2007)).  In Connecticut, any municipality, including any town, city, or consolidated town and borough, shall have the power to sue and be sued.  Conn. Gen. Stat. § 7–148(a), (c)(1)(A).  A

municipal body, subdivision, or board is not a proper defendant
if the legislature has not enacted a specific statute enabling
it to sue and be sued.  See Holt v. Town of Stonington, No.
3:09-CV-2069(JCH), 2011 WL 5864812, at *3 (D. Conn. Nov. 18,
2011).  Put differently, "where the legislature has intended to
grant such independent legal status to a department or board, it
has done so explicitly."  Luysterborghs v. Pension & Ret. Bd. of
Milford, 927 A.2d 385, 388 (Conn. Super. Ct. 2007); see, e.g.,
Conn. Gen. Stat. § 10-241 ("Each school district shall be a body
corporate and shall have the power to sue and be sued."); Conn.
Gen. Stat. § 7-233e ("A municipal electric energy cooperative
created in the manner provided in this chapter shall constitute
a public body corporate and politic . . . and shall have the . .
. [power] . . .  [t]o sue and be sued."); Conn. Gen. Stat. § 7-
273b(d) ("[A] transit district . . . shall be a body corporate
and politic, and may sue and be sued.").

Here, the court concludes that the board of selectmen is
not a proper defendant in this case.  Chapter 91 of Title 7 of
the Connecticut General Statutes relates solely to selectmen,
and nowhere does the legislature provide for the board's ability
to "sue or be sued."  See Conn. Gen. Stat. §§ 7-10 to -15.  The
duties of selectmen are limited to "the power to prosecute and
defend suits *to which the town is a party*; to submit claims to
arbitration; and to settle claims."  Keeney v. Town of Old

8

Saybrook, 237 Conn. 135, 147–48 (1996) (citations omitted) (emphasis added).  A board of selectmen may "superintend the concerns of the town," Conn. Gen. Stat. § 7-12, but this statutory language does not state explicitly the right for the board, itself, to sue or be sued.

Moreover, although boards of selectmen have been parties to litigation in Connecticut state and federal courts,[4] courts have not addressed specifically the legal status of the board. Courts have rejected the argument that a municipal body may be sued simply because it has been sued in the past.  See Watrous v. Town of Preston, 902 F. Supp. 2d 243, 257 (D. Conn. 2012) (acknowledging that the administrative body had appeared as party defendants in previous lawsuits, but that such actions are not "the same as an explicit statutory authorization to constitute an entity as a body politic capable of suing and being sued"); Holt v. Town of Stonington, No. 3:09-CV-2069(JCH), 2011 WL 5864812, at *3 (D. Conn. Nov. 18, 2011) ("The fact that a suit was allowed to go forward against a [municipal body] where its legal status was uncontested does not support the conclusion that the [body] is a separate legal entity."); Luysterborghs v. Pension & Ret. Bd. of Milford, 927 A.2d 385, 388 (Conn. Super. Ct. 2007) ("That municipal pension boards have

---

[4] A search on the Westlaw database reveals that only four federal district court cases and thirteen state trial court cases include boards of selectmen as parties to litigation.

been defendants in cases where their legal status was not
contested notwithstanding, does not require this court to find
that the board is a [separate] legal entity . . . .").
Therefore, any argument that the board of selectmen is a proper
defendant simply because boards have been sued in the past is
without merit.

The court holds that the Connecticut legislature has not
statutorily authorized a board of selectmen to sue or be sued,
and accordingly, the board of selectmen in this case is not a
proper defendant.  The defendants' motion to dismiss the board
of selectmen as a defendant is granted.

## II.   Goodmaster Abandoned His Claims Alleging Title VII Retaliation, Substantive Due Process Violations, and Civil Conspiracy

Count two alleges that the town retaliated against
Goodmaster in violation of his rights secured by Title VII of
the Civil Rights Act of 1964, as amended by the Civil Rights Act
of 1991.  The town argues that Goodmaster cannot state a claim
pursuant to Title VII because he did not participate in a
protected activity.  Specifically, the town contends that "age
discrimination and complaints about an employer's alleged
mismanagement are not covered by Title VII."  Goodmaster failed
to respond to this argument.

Count three alleges, in part, that the defendants
discriminated and retaliated against Goodmaster in violation of

his "constitutional rights to . . . due process of the laws."
The defendants argue that the complaint fails to allege that the
defendants' conduct "shock[ed] the conscience."  They further
contend that "the [due process] claim is duplicative" of
Goodmaster's equal protection claim.  Goodmaster failed to
respond to this argument.

Count six alleges that "[t]he defendants . . . agreed and
conspired to deprive the plaintiff of his rights" by refusing to
extend Goodmaster's employment, by subjecting Goodmaster to an
additional hearing, and by permitting "the defendant Metzler to
participate in the hiring process."  The defendants' argue that
Goodmaster's civil conspiracy claim is preempted "by the ADEA,
CFEPA, and the Rehabilitation Act of 1973."  Goodmaster failed
to respond to this argument.

"When a plaintiff's specific claim is attacked in a motion
to dismiss, a plaintiff must rebut the defendant's argument
against that claim or it shall be deemed abandoned." Miller v.
Hous. Auth. of New Haven, No. 3:13cv1855 (JBA), 2014 WL 2871591,
at *11 (D. Conn. June 24, 2014) (quoting Massaro v. Allingtown
Fire Dist., No. 3:03-CV-00136 (EBB), 2006 WL 1668008, at *5 (D.
Conn. June 16, 2006)); see also W.R. v. Conn. Dep't of Children
& Families, No. 3:02CV429 (RNC), 2003 WL 1740672, at *2 n.5 (D.
Conn. Mar. 24, 2003) (holding that since "plaintiffs' response
[was] limited to defendants' arguments concerning the ADA and

Rehabilitation Act . . . any claim for damages under pendent state law claims [were] deemed abandoned").

The court concludes that Goodmaster abandoned count two, count three in part, and count six.  Although the court granted a motion for extension of time to respond to the motion to dismiss and the plaintiff took an additional seventeen days to file his opposition,[5] Goodmaster's objection fails to address the town's argument with respect to these counts.  Accordingly, the town's motion to dismiss the Title VII claim, the due process claim, and the civil conspiracy claim is granted.

**III.   Count Three: Constitutional Violations**

Count three alleges that the individual defendants discriminated and retaliated against Goodmaster in violation of his "constitutional rights to equal protection . . . and freedom of speech."  The court presumes that Goodmaster's constitutional claims are brought pursuant to 42 U.S.C. § 1983.[6]

**a. Equal Protection Clause**

The defendants argue that the equal protection claim is "preempted by the ADEA."  They rely in part on <u>Zombro v.</u>

---

[5] On April 28, 2014, the court extended the time for the plaintiff to respond to the motion to dismiss to and including June 9, 2014.  On June 26, 2014, the plaintiff filed his opposition without seeking a second motion for extension of time.  In total, Goodmaster took 80 days to file his opposition.

[6] 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Baltimore City Police Department, where the fourth circuit held
that congressional intent and other factors indicate that the
ADEA "foreclose[s] actions for age discrimination under § 1983."
868 F.2d 1364, 1369 (4th Cir. 1989).  Goodmaster responds that
an equal protection claim is not preempted by the ADEA,
highlighting that the second circuit has not yet decided the
issue.  He also argues that "[c]ourts in this Circuit have found
that the ADEA does not preempt an age discrimination claim under
§ 1983 claim . . . ."

The purpose of the ADEA is to "promote employment of older
persons based on their ability rather than age; to prohibit
arbitrary age discrimination in employment; [and] to help
employers and workers find ways of meeting problems arising from
the impact of age on employment."  29 U.S.C. § 621(b).  Under
the ADEA, an employer cannot "fail or refuse to hire or to
discharge any individual or otherwise discriminate against any
individual with respect to his compensation, terms, conditions,
or privileges of employment, because of such individual's age."
29 U.S.C. § 623(a)(1).

District courts within this circuit have concluded that the
ADEA does not preempt § 1983 equal protection claims.[7]  See,
e.g., Volpi v. Ctr. Moriches Union Free Sch. Dist., 9 F. Supp.

---

[7] The second circuit has not decided this issue.  See Butts v. NYC Dep't of
Hous. Pres. & Dev., 307 Fed. App'x 596, 598, n.1 (2d Cir. 2009).

3d 255, 257 (E.D.N.Y. 2014); Fusaro v. Murphy, No. 3:08-cv-1234(RNC), 2011 WL 4572028, at *2 (D. Conn. Sept. 30, 2011); Shapiro v. N.Y.C. Dep't of Educ., 561 F. Supp. 2d 413, 420 (S.D.N.Y. 2008); Purdy v. Town of Greenburgh, 166 F. Supp. 2d 850, 868 (S.D.N.Y. 2001). These courts applied the reasoning from Saulpaugh v. Monroe Community Hospital, where the second circuit held that Title VII does not preempt a § 1983 claim "if some law other than Title VII is the source of the right alleged to have been denied." 4 F.3d 134, 143 (2d Cir. 1993). In Saulpaugh, Title VII did not preempt the plaintiff's § 1983 claim for gender discrimination because the plaintiff brought the cause of action pursuant to the first amendment, the equal protection clause, and the due process clause. Id. Courts have noted the similarities between the ADEA and Title VII and concluded that the ADEA does not preempt a § 1983 action for age discrimination when the § 1983 claim is based on substantive rights distinct from those established by the ADEA, such as the equal protection clause. See, e.g., Purdy v. Town of Greenburgh, 166 F. Supp. 2d 850, 868 (S.D.N.Y. 2001).

Here, the court will not depart from the overwhelming consensus within this circuit that the ADEA does not preempt a § 1983 claim. Accordingly, the court concludes that Goodmaster's equal protection claim is not preempted by the ADEA, and the

defendants' motion to dismiss with respect to the equal protection claim is denied.[8]

### b. Freedom of Speech

The defendants next argue that Goodmaster's administrative complaints failed to address matters of public concern. Specifically, they contend that the grievances pursued through the collective bargaining agreement solely concern the defendants' disciplinary actions against Goodmaster, which are "purely personal" in nature.  They also argue that the CHRO and EEOC complaints only involve his dissatisfaction with the treatment he received.  Additionally, the defendants state that the Freedom of Information Act requests were directly related to his employment with the town and made pursuant to his official employment duties as a police officer.  Finally, they argue that Goodmaster failed to show a causal connection between the administrative complaints and the retaliatory conduct.

Goodmaster responds that the defendants misinterpreted the complaint because he addressed matters of public concern while "advocat[ing] on his own behalf."  He argues that his complaints regarding the defendants' "mismanagement" of the police department and their "unethical, unfair, and illegal behavior"

_____

[8] It appears that the defendants also argue that Goodmaster cannot bring a claim for age discrimination under the equal protection clause because the equal protection clause does not recognize age as a protected class. However, it is well-established that states may not discriminate on the basis of age if the age classification is not rationally related to a legitimate state interest.  See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000).

is important to all of the town's citizens.  He also argues that the defendants failed to "demonstrate that [his] statements [were] 'part-and-parcel' of his official duties."  Finally, Goodmaster contends that he sufficiently showed a causal connection between his speech and the retaliatory conduct because he filed the administrative complaints "recently," and the EEOC action settled "approximately one month before the defendants took . . . unlawful actions against [him]."

It is "long established . . . that the government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment." Connick v. Myers, 461 U.S. 138, 156 (1983).  However, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  Accordingly, to state a First Amendment retaliation claim, the plaintiff must demonstrate that:

> (1) the speech at issue was made as a citizen *on matters of public concern* rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action.

Vanderpuye v. Cohen, 94 Fed. App'x 3, 4-5 (2d Cir. 2004) (quoting Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003)) (emphasis added).

16

The first prong requires that speech must "be fairly characterized as . . . a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983).  Matters of public concern include any issues relating to political, social, or other concern to the community.  Id.  To determine whether the speech is a matter of public concern, the court may examine "the content, form, and context of a given statement, as revealed by the whole record." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (quoting Connick, at 147–48).  However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

Here, Goodmaster has a First Amendment right to speak on matters of public concern.  However, it is too early in the litigation process to determine whether his complaints addressed matters of public concern or whether he made statements pursuant to his official duties as a police officer.  Therefore, the court concludes that at this stage of the proceedings, the complaint alleges sufficient facts, taken as true, to pursue a First Amendment retaliation claim.  Accordingly, the defendants' motion to dismiss with respect to the First Amendment retaliation claim is denied.

### c. Qualified Immunity

The defendants argue that Miller, Metzler, and McConologue, who are sued in their individual capacities, are entitled to qualified immunity.  They argue that it is not clearly established in the second circuit that the ADEA preempts § 1983 claims.  They also contend that it is not clearly established that Goodmaster is protected under the First Amendment for filing CHRO and EEOC complaints or Freedom of Information requests against the police department.

Goodmaster responds that since the second circuit "favors the position that the ADEA does *not* preempt [§ 1983] claims," the law is clearly established.  He also argues that it is clearly established that the First Amendment protects government employees who speak out on matters of public concern.

To determine whether an officer is entitled to qualified immunity, the court must "engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'"  Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  In assessing a qualified immunity defense, the court must "accept as true all well-pled factual allegations, and draw all reasonable inferences in the plaintiff's favor."  Warney v. Monroe Cnty.,

587 F.3d 113, 116 (2d Cir. 2009).  At the motion to dismiss stage, "the defense faces a formidable hurdle." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

Here, the question is not whether it is clearly established that the ADEA preempts a § 1983 claim or whether a government official can speak out on matters of public concern.  Instead, the issues are 1) whether the defendants violated Goodmaster's constitutional rights to be free from age discrimination and to engage in free speech, and 2) whether these rights were clearly established at the time of the alleged conduct.

Goodmaster alleges that even though the board of police commissioners decided to extend Goodmaster's employment, the defendants subjected him to a hearing in front of the board of selectmen.  At the hearing, Miller "publically admitted that he perceived the plaintiff to be a 'liability'" and was concerned for "younger officers on the promotion list."  After, McConologue and Metzler pressured the board of police commissioners to change its decision because of Goodmaster's age and in retaliation against Goodmaster for filing administrative complaints against the defendants.  Accepting these allegations as true, the complaint sufficiently alleges that the defendants violated Goodmaster's clearly established rights to be free of age discrimination and to engage in free speech.  Therefore, the

19

defendants' motion to dismiss on the grounds of qualified immunity is denied.

## IV.   Count Seven: Intentional Infliction of Emotional Distress

The defendants argue that "[Goodmaster] cannot make out a *prima facie* case of [intentional infliction of] emotional distress because the [alleged retaliatory] conduct is not extreme and outrageous as a matter of law."  Goodmaster responds that whether conduct is extreme and outrageous is a question for the jury, "and the court should not usurp the role of the jury unless no reading of the facts alleged" could give rise to a claim of intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, the complaint must allege, *inter alia*, extreme and outrageous conduct.  Appleton v. Bd. of Educ. of Stonington, 254 Conn. 205, 210 (2000) (quoting Petyan v. Ellis, 200 Conn. 243, 253 (1986)).  Extreme and outrageous conduct is defined as "conduct that exceeds 'all bounds usually tolerated by decent society . . . .'" Id. (quoting Petyan, at 254 n.5).  The Connecticut supreme court has provided that for conduct to be extreme and outrageous, it must:

> Go beyond all possible bounds of decency, and . . .
> be regarded as atrocious, and utterly intolerable in
> a civilized community . . . . Conduct on the part of
> the defendant that is merely insulting or displays
> bad manners or results in hurt feelings is
> insufficient to form the basis for an action based
> upon intentional infliction of emotional distress.

20

Appleton v. Bd. of Educ. of Stonington, 254 Conn. 205, 210-11 (2000).  "Whether conduct may be 'reasonably regarded' as extreme and outrageous is a question, in the first instance, for the court."  Huff v. W. Haven Bd. of Educ., 10 F. Supp. 2d 117, 122 (D. Conn. 1998); see also Gillians v. Vivanco-Small, 128 Conn. App. 207, 211 (2011).

In the employment context, "an employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner."  Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000).  In other words, "the mere termination of employment, even where it is wrongful, is not by itself enough to sustain a claim.  Venterina v. Cummings & Lockwood, 117 F. Supp. 2d 114, 120 (D. Conn. 1999).

The court concludes that Goodmaster has failed to state a claim for intentional infliction of emotional distress.  Nothing in the complaint suggests that the defendants acted in an atrocious manner that is unacceptable in a civilized society.  Moreover, any wrongful motivations in not extending Goodmaster's employment are, by themselves, insufficient allegations to state a claim for intentional infliction of emotional distress.

Therefore, the defendants' motion to dismiss count seven is granted.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss (document no. 26) is GRANTED with respect to the board of selectmen as defendants and counts two, six, and seven, and GRANTED IN PART and DENIED IN PART with respect to count three.

It is so ordered, this 21st day of March 2015, at Hartford, Connecticut.

                              /s/
                    Alfred V. Covello,
                    United States District Judge